[Civ. No. 4437. First Appellate District, Division One.—November 15, 1924.]

## MAX MULBORN, Respondent, v. MONTEZUMA IMPROVEMENT CO. (a Corporation), Appellant.

## JOHN P. WYATT et al., Respondents, v. MONTEZUMA IMPROVEMENT CO. (a Corporation), Appellant.

[1] VENDOR AND VENDEE—CONTRACTS—ACCOUNTS—DAMAGES—RESCISSION.—The fact that vendees of land elected to sue for and did recover damages against a vendor for breach of contract caused by the vendor's failure to render semi-annually until the expiration of the contract an account to the vendees of the increase and sales of hogs which the vendor agreed to care for, feed, and breed for the account of the vendees, did not constitute a bar to the rescission of the contract for the purchase of the land or to an action to recover moneys paid to the vendor on the contract, where subsequent to the commencement of the action for damages the vendor continued to refuse to render accounts as required by the contract and to pay to the vendees their share of the proceeds derived from sales.

[2] ID.—REPUDIATION — CANCELLATION — RESCISSION.—Where, after the vendees first gave written notice that they would make no further payments on the contract because of the vendor's failure to render accounts as provided by the contract, and before the action for damages was commenced by the vendees the vendor served the vendees with written notice that the contract was canceled because of the vendees' failure to make payments, such attempted cancellation of the contract did not affect the vendees' right to rescind for substantial breach of the contract committed after the recovery of damages.

[3] ID. — CONTRACTS — RESCISSION — DILIGENCE—STATUTE OF LIMITATIONS.—The vendor's continuing duty to care for, feed, and breed the hogs, and to account for the increase and sales thereof, being in force up to the very time the vendees rescinded the contract, the rescission was therefore prompt, and the vendees' causes of action for money had and received based on their rescission were not barred by the statute of limitations.

1. See 15 R. C. L. 967; 15 Cal. Jur. 179.
2. See 6 R. C. L. 925; 6 Cal. Jur. 392.
3. Time within which right to rescind must be exercised, note, 74 Am. Dec. 657. See, also, 6 R. C. L. 935.

[4] Id.—Executory Contracts—Failure of Consideration.—In all executory contracts the several obligations of the parties constitute to each, reciprocally, the consideration of the contract; and a failure to perform constitutes a failure of consideration—either partial or total as the case may be—within the meaning of section 1689 of the Civil Code.

[5] Id.—Repudiation—Performance—Rescission.—The vendor having repudiated the contract in question by its failure to render accounts as provided thereby, the vendees were not obliged to continue the monthly payments on the purchase price of the land, and hence they were not in default at the time of the rescission.

[6] Id.—Money had and Received—Evidence—Account-books.—In these actions by vendees for money had and received, the ruling of the trial court admitting in evidence certain portions of the account-books of the defendant vendor was not error, such evidence being relevant and competent for the purpose for which it was offered.

---

(1) 20 C. J., p. 15, sec. 10. (2) 20 C. J., p. 16, sec. 10. (3) 39 Cyc., p. 1427. (4) 39 Cyc., p. 1405. (5) 39 Cyc., p. 1606. (6) 27 Cyc., p. 883.

APPEAL from judgments of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank McGowan and Blaine McGowan for Appellant.

Rufus H. Kimball for Respondents.

KNIGHT, J.—These two actions for money had and received were commenced by different plaintiffs against the same defendant but they involve substantially the same facts, except as to dates and amounts. They were separately tried and decided, and a judgment was entered in each action against the defendant, from which defendant appeals. The appeals are taken upon separate bills of exceptions printed in a single transcript and are presented on one set of briefs.

The defendant Montezuma Improvement Co., a corporation, was the owner of approximately 10,700 acres of land

---

5. See 6 R. C. L. 926; 6 Cal. Jur. 388.
6. See 17 Cal. Jur. 634.

situate in Mendocino County, upon which it was conducting
the business of breeding and selling hogs for profit. During
the year 1917 it subdivided said land into twenty-acre tracts
and sought to sell the same, together with a certain number of
hogs, to individual purchasers, on time, for the sum of
$1,000. The contracts of sale provided for an initial pay-
ment of $140 payable at the time the contract was signed
and the balance in monthly installments of $20 each. Said
contracts also provided that upon making initial payment
said company would execute a bill of sale to each purchaser
of two brood sows, which, with their progeny, said company
agreed to keep, care for, feed, and breed for a period of
three and one-half years, for one-half of the increase thereof
and "to render an account of the increase and sales at least
every six months until the expiration of the agreement."
Upon final payment being made said company agreed to
execute and deliver to the purchaser a deed to twenty acres
of said land. In case the purchaser defaulted, said company
was authorized "to sell a sufficient number of hogs at pre-
vailing market prices to cover amount in default"; and
in the event the amount received was insufficient to cover
payments due, the purchaser agreed to pay the balance
within thirty days after written notice or the agreement
would become null and void and the right and interest of
said purchaser in and to said real and personal property and
the payments made thereon would be forfeited, "and title
to said land revert to and revest in said company as abso-
lutely and as fully as if this agreement had never been
issued." Said contract also conferred upon said company
full power of attorney to act for the purchaser in making all
payments due under said contract and, in case of default,
to execute "any and all such instruments of release or quit-
claims or cancellations and rescissions of this contract as
shall be required by said company . . . to release to the said
company all right, title and interest in said lands." Con-
tracts of that nature were entered into with plaintiffs on
May 31 and September 14, 1917, respectively. Thereupon
initial payments were made and the bills of sale to the per-
sonal property were executed and delivered. Monthly in-
stallments were thereafter paid until January, 1919, when
all payments ceased because of defendant's failure to render

accounts as provided for in said agreement. On February 27, 1919, plaintiffs served defendant with written notice to the effect that said defendant had breached said contract in that it had failed to render "an accounting of the increase and sales of the progeny of the sows sold," and that plaintiffs would make no further payments on said contract; also that "any and all agency and power of attorney conferred" by said agreement upon said defendant for the sale of hogs or land was revoked. On March 3, 1919, said defendant retaliated by serving plaintiffs with written notice that said contracts had been canceled and were then null and void, because of plaintiffs' failure to make said monthly payments. Plaintiffs replied by letter, stating that defendant had "no right whatever to declare" said contracts null and void and that plaintiffs would "not accept your assertion for it."

On May 2, 1919, plaintiffs, with two others, commenced a suit against defendant for alleged breach of contract. The complaint alleged in substance that defendant had failed to account and had also neglected to take proper care of said hogs; that the president of the defendant corporation had mixed the hogs belonging to him with those of the unit-holders in such a manner that a fair apportionment of the increase of said hogs was not being carried out. It further alleged that the entire enterprise was being extravagantly and otherwise wrongfully managed and that said unit-holders were not receiving their share of the proceeds from sales. Plaintiffs prayed for damages and for an accounting; that a receiver be appointed and that defendant be restrained from collecting further money on said contracts and from committing waste; also, that if rescission of said contracts became necessary, that plaintiffs be returned the amount of money already paid by them. Defendant denied the charges of neglect and wrongdoing and averred a cancellation of said contracts upon the ground of plaintiff's default in making payments. The trial court made no findings upon any of the matters relied upon as constituting a breach of contract except the one pertaining to the duty of defendant to account, and in this respect found that defendant "has expressly broken and defaulted in that portion of its said agreements which requires the rendition of an accounting."

It further found that plaintiffs were not in default and that said contracts had not been canceled or annulled nor were the rights of the plaintiffs forfeited thereunder. For defendant's ''failure to render an accounting'' the court awarded plaintiffs nominal damages in the sum of $10 each. Judgment was entered accordingly, which defendant subsequently satisfied.

Nothing further was done apparently until March 21, 1921, when these plaintiffs served defendant with ''notice of rescission and demand for return of money paid on contracts'' and offered to restore everything received by them under said contract. The service of that notice was followed by these two actions for money had and received, in which plaintiffs sought to recover the sums of money paid by them under said contract. The defendant's answers, besides denying certain allegations of said complaints, pleaded that plaintiffs' causes of action were barred by the provisions of subdivision 1 of section 239 of the Code of Civil Procedure; that the plaintiffs having first elected to sue for damages for the breach of the contract, and having recovered a judgment therefor, which was satisfied, were afterward precluded from rescinding; that the judgment in the former suit was and is a bar to the present actions.

The trial court found against the defendant upon the special defenses pleaded, and judgment followed for the plaintiff Mulford in the sum of $420 and for the plaintiffs Wyatt in the sum of $318, together with interest from March 22, 1921.

The principal contention made by appellant upon these appeals is that when appellant declared said contracts canceled and the rights of respondents thereunder forfeited, respondents were then given the option of treating said contracts as subsisting and suing for damages, or of rescinding and suing for the money paid thereunder; that having adopted the former remedy they were thereafter precluded from pursuing the latter. This contention is based mainly upon the established rule that there cannot be a double remedy for the same breach. In this regard it may be conceded that if the prior action and the present ones involved the same breach, the present actions are not main-

69 Cal. App.—40

tainable. The record discloses, however, that such is not the case.

[1] The contract in question, as will be noted, contained several independent covenants, one of which called upon the appellant to perform the duty of rendering ''an account of the increase and sales at least every six months until the expiration of the agreement.'' Appellant failed to comply with that specific provision of the contract up to January, 1919, and while such failure doubtless supplied sufficient grounds for an action for damages, for which plaintiffs were compensated in a nominal sum, it evidently did not amount to a breach of such serious nature as to justify a rescission of the entire contract, because the duty to account was merely subsidiary to the main obligation of the contract. The decision and judgment in that action, so far as plaintiffs' right of recovery was concerned, were restricted by their terms to the fact that defendant had failed to render accounts up to January, 1919, and other than declaring that said contracts had not been canceled, did not purport to adjudicate any other issue. Manifestly the scope of that action could not have included the nonperformance of duties appellant was obliged to perform subsequent to the date of the commencement of that action. During the two succeeding years, however, appellant was called upon by the contract to execute other and additional promises, one of which was the continuing duty to render accounts at least semi-annually during those two years, and the other which, probably, was most vital to respondents, was to pay to respondents their share of the proceeds derived from sales. Appellant's refusal to do either clearly constituted a failure of consideration sufficient to justify a rescission.

The course adopted by respondents in first suing for a breach and then rescinding on additional and independent grounds finds ample support in the authorities. In Williston on Contracts, volume III, section 1292, the author says: ''A contract may provide for more than one performance by a promisor. In such case it seems the nonperformance of each thing promised is a separate breach of contract rendering the promisor liable; and an action upon a breach of one promise will not necessarily involve the inability to sue subsequently on later breaches of the same contract, for the

causes of action are different.  And a promise in form single may involve several performances and thus be in effect several promises.'' Corpus Juris gives the following rule: ''A breach of an independent covenant, of a covenant which does not go to the whole consideration of a contract, but which is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract, or warrant its rescission by the injured party.  The latter is still bound to perform his part of the contract, and his only remedy for the breach is compensation in damages.'' (13 Cor. Jur. 614, sec. 664.)  And Ruling Case Law, in addition (vol. 6, p. 1021, sec. 382), states the doctrine that after the time has elapsed within which a party to a contract is given to perform an act and the act has not been done, the other party ''may sue and recover for a nonperformance notwithstanding the fact that by the terms of the agreement other things remain to be performed, unless they are in their nature incapable of separation.  If such an action is brought and a recovery had it will be limited to damages sustained at the time of instituting the action and will constitute a bar to any further recovery for a breach of this part of the agreement.''

It may be also conceded, as appellant contends, that after a party declares a rescission of a contract it cannot thereafter be made the basis of an action for damages, for the reason that the rescission terminates the contract. (*Lemle* v. *Barry,* 181 Cal. 1 [183 Pac. 150]; *House* v. *Piercy,* 181 Cal. 247 [183 Pac. 807].)  But the situation here does not fall within that rule because respondents did not first terminate the contract by rescission and afterward sue for damages.  On the contrary, when the first breach occurred, they expressly declared that they elected to stand upon the contract, that they did not accept appellant's attempted cancellation thereof.  And that position was adhered to by them until a substantial breach was committed, one that amounted to a failure of consideration.  The contract was then terminated by them.  [2] After recovery of nominal damages for the first breach, respondents' status was to all intents and purposes the same as it was before the occurrence of that breach; consequently, later, when substantial breach was committed of other independent covenants, they were not

deprived of their right of election of remedies, nor was such right of election affected by appellant's previous attempted cancellation of the contract. They were entitled to treat said notice of cancellation as inoperative and await the time when the contract was to be fully executed and then hold appellant responsible for all the consequences of nonperformance. For the reasons stated we are satisfied that the trial court was correct in its conclusions that the judgment in the prior action was not *res adjudicata* and that the election by respondents to treat the contract as subsisting and sue for damages resulting from the first breach did not operate as an estoppel against their subsequent action in rescinding the contract.

Appellant further contends that, in any event, under the circumstances, a rescission was not available to respondents; or if it was, that respondents did not rescind promptly and that the statute of limitations intervened. We think the points are without merit. As already pointed out, the contract was still executory at the time of rescission. Appellant's previous delivery of the bills of sale for two brood sows constituted only a small part of the execution of the entire contract relating to the personal property. Appellant was thereafter obliged to care for, feed, and breed said animals, and to account for the increase and sales thereof. [3] Such continuing duty was in force up to the very time respondents rescinded the contract. The rescission was therefore prompt and respondents' causes of action were not barred by the statute of limitations. Neither can we accede to the proposition urged by appellant that the failure of appellant to perform the obligations specified in the notice of rescission did not constitute grounds for rescission. [4] "In all executory contracts the several obligations of the parties constitute to each, reciprocally, the consideration of the contract; and a failure to perform constitutes a failure of consideration—either partial or total as the case may be— within the meaning of section 1689 of the Civil Code." (*Richter* v. *Union Land & Stock Co.*, 129 Cal. 372 [62 Pac. 39]; *Bray* v. *Lowery*, 163 Cal. 256 [124 Pac. 1004].) [5] Neither were respondents in default at the time of the rescission. After appellant repudiated the contract respondents were not obliged to continue the monthly payments. (Sec.

1440, Civ. Code; *Donlin* v. *Meyer,* 30 Cal. App. 225 [169 Pac. 447] ; *Sheplar* v. *Green,* 96 Cal. 218 [31 Pac. 42].)

[6] The ruling of the trial court admitting in evidence certain portions of the account-books of said defendant was not error. The evidence was relevant and competent for the purpose for which it was offered.

Judgment affirmed.

St. Sure, J., and Cabaniss, P. J., *pro tem.,* concurred.