[Civ. No. 8571. First Appellate District, Division One.—January 26, 1933.]

SIDNEY G. CARLTON, Respondent, v. SEVIN–VINCENT SEED CO. (a Corporation), Appellant.

Norman A. Eisner for Appellant.

Dunne, Dunne & Cook and McClymonds & Wells for Respondent.

THE COURT. — Respondent purchased from the appellant corporation 4,500 shares of its preferred stock under an agreement which he claims was subsequently breached by the corporation; thereupon he rescinded the transaction and brought this action to recover the amount paid for the stock. Judgment was entered in his favor, and the corporation appeals.

The corporation was organized in June, 1928, for the purpose of acquiring a business operated by its president, J. R. Walsh. The latter's wife was the treasurer of the corporation, his brother was secretary, and the three constituted the board of directors. In June, 1929, the corporation advertised in a newspaper for a "bookkeeper for secretaryship". Continuing, the advertisement read: " . . . successful moderate-sized wholesale firm; invest $5000; salary $225 and share profits. Reply in detail to Box 15,560 . . . " Respondent, being a man of some business experience, having been employed by another corporation for several years as bookkeeper and paymaster, and later for some ten years as representative on the Pacific Coast for the United States Shipping Board, responded to said advertisement, and after

several conferences with Walsh, and in June, 1929, the corporation entered into the agreement with respondent, which is the basis of this action. With respect thereto the trial court found that respondent agreed to purchase from the corporation 4,500 shares of its preferred and 500 shares of its common stock for $5,000, but that "as a condition precedent to and a further consideration for the purchase of said stock" it was agreed that respondent would be made a director and the secretary of the corporation and should "receive immediate and continuing employment" with the corporation, for which he was to be paid a monthly salary of $225; that if at any time said employment should cease or be terminated said corporation would return to him the money he had paid for said stock. Continuing, the court found that in part performance of said agreement respondent paid to the corporation $1,000 on July 3, 1929, and $3,500 on July 9, 1929, for which he received 4,500 shares of preferred stock; that in partial compliance with said agreement the corporation employed respondent for a period of five months, and paid him therefor $225 a month, but that at the end of said period of time, to wit, on December 9, 1929, "without reasonable or any cause, provocation or excuse" the corporation wrongfully dismissed respondent from its employ and thereafter refused to give him employment of any kind. Furthermore, the court found that respondent was not made a director or the secretary of said corporation, although respondent frequently requested that such action be taken, as agreed; that he offered and at all times was ready to pay the additional $500 for the common stock, as agreed, but that such payment was waived by said corporation; that all of the other conditions respondent agreed to perform were performed by him. The court also found that upon the breach of said agreement by said corporation and on January 2, 1930, respondent tendered the corporation the stock theretofore delivered to him, together with the full amount of dividends received by him thereon from the date of the delivery of the stock to him, and made demand for the return to him of said sum of $4,500; but that the corporation refused to accept the return of the stock or to repay to respondent any portion of said purchase money.

■ Appellant contends, as one ground for reversal, that the decision of the trial court is against law, in that the breach of the contract found by the trial court would give rise only to an action for damages. There is no merit in the point. The facts found bring the case clearly within the doctrine declared in *Brown* v. *National Electric Works*, 168 Cal. 336 [143 Pac. 606], which holds that where an agreement is made by a corporation in consideration of the purchase of certain of its shares of stock at a fixed price to employ the purchaser in its business at a stated salary the unwarranted breach by the corporation of its agreement to so employ the purchaser entitles the latter, under subdivision 2 of section 1689 of the Civil Code, to rescind the contract for partial failure of consideration in a substantial part and to recover the purchase price paid for the stock, and that the purchaser is not limited to an action for damages for the breach of the contract.

■ Appellant claims, however, that respondent was not discharged, that he quit voluntarily; furthermore, that "If he had been discharged, such discharge would have been justified." The evidence is sufficient to support the finding to the contrary. It appears therefrom that on the day respondent's services were terminated Walsh told him that he interfered with his plans and that he would have "to get out"; that respondent protested upon the ground that his money was "tied up" in the business; that Walsh then said that if respondent could raise an additional $10,000 he could stay; and that when respondent replied that it was impossible for him to obtain any such amount Walsh told him he would "have to leave", which he did. In this connection also it was shown that in November, 1929, the month preceding the dismissal of respondent, the corporation, acting through Walsh, sought to hire another bookkeeper to replace respondent. And there was no evidence whatever introduced to prove that respondent's services were unsatisfactory. At the trial a few errors in bookkeeping were shown, but, as suggested by the trial court at the time, there is no such thing as a perfect bookkeeper; and the evidence affirmatively shows that during the entire period of respondent's employment no criticism whatever was made of the manner in which he performed his work.

■

■ It is also claimed that the evidence does not support the finding to the effect that the appellant waived respondent's omission to invest the remaining $500 in the stock of said corporation; and it is argued, therefore, that respondent could not put appellant in default so long as he himself was in default. The record discloses ample evidence to support the trial court's finding. The testimony given by respondent is legally sufficient in itself for such purpose.

■ Further contention is made that the portion of the agreement to make respondent a director and the secretary was void. The consideration and determination of that question here is unnecessary, however, for the reason that even assuming such a promise was unenforceable, it was clearly severable from that portion of the agreement to give respondent "immediate and continuing employment", the breach of which, as above pointed out, was alone sufficient to warrant a rescission and the recovery of the money paid for the stock. (*Brown* v. *National Electric Works, supra.*)

■ Nor do we find any merit in appellant's contention that there is a fatal variance between the findings and the allegations of the complaint, and that the findings are inconsistent. The objections made in this behalf are, in our opinion, purely technical and based on a strained construction of the complaint and the findings. As already pointed out the action was based mainly upon the proposition that in consideration of the promise made by the corporation to give respondent immediate and continuing employment he would invest in a certain amount of the corporation's stock and that if such employment were terminated the corporation would take back its stock and return to respondent the money he had paid therefor. Such an agreement was in substance pleaded in the complaint and clearly established by the evidence; and an analysis of the allegations of the complaint and the findings discloses no substantial variance, nor any material inconsistency in this regard. Moreover, the complaint is in two counts. In the first the circumstances of the transaction are alleged, and appellant's objections are founded on the matters set forth in that count. The second is a common count. Even though it be assumed, therefore, that the findings relating to the first count are subject to criticism, they are as a whole amply sufficient to

sustain a judgment in respondent's favor under the second count.

The form of the judgment entered, however, is faulty, and consequently requires correction. It reads as follows: " . . . it is now ordered, adjudged and decreed, that plaintiff have and recover of defendant the sum of Four Thousand Five Hundred Dollars ($4,500), together with plaintiff's costs of suit in the sum of $42.50 together with interest thereon at the legal rate, less all dividends received by plaintiff on any stock of defendant issued to plaintiff, with interest thereon at the legal rate, from the time said dividends were received by plaintiff, but without interest on any dividends not received by plaintiff, said deduction on account of dividends to be made only as to dividends received by plaintiff, and as to any dividends claimed to be received the same may be accounted for by the return of uncashed dividend checks; and it is further ordered, adjudged and decreed, that all stock of defendant issued to plaintiff be, and the same is, hereby cancelled as of the date when issued, and it is ordered that plaintiff deliver up any certificates evidencing the same to defendant on demand". As will be noted, it provides that respondent shall receive interest at the legal rate on the money paid for the stock, but it fixes no date from which the interest shall run; furthermore it provides that from the sum found to be due respondent there shall be deducted all cash dividends received by him, and that all "uncashed dividend checks" shall be returned, but the amounts of said cash dividends and uncashed dividend checks are not stated, nor does the evidence or findings show the amounts thereof. However, the evidence and the findings do show that plaintiff rescinded the transaction on January 2, 1930, at which time he tendered to the corporation the stock and all dividends received thereon by him. We are of the opinion, therefore, that he was legally entitled to interest at the legal rate from the date of such rescission.

It is ordered, therefore, that the judgment be modified to read as follows: It is ordered, adjudged and decreed, 1st: That the stock heretofore issued to plaintiff by defendant be and the same is hereby cancelled as of the date when issued, and that plaintiff forthwith deliver to and deposit with the clerk, for and in behalf of defendant, all certifi-

cates covering the same; 2d: That plaintiff do have and recover of and from the defendant the sum of four thousand five hundred dollars ($4,500) with interest thereon at the legal rate from January 2, 1930, up to the date of the entry of judgment, together with his costs of suit amounting to $42.50; 3d: That immediately upon the entry of said judgment this court ascertain and determine the amount of cash dividends received by plaintiff on said stock and direct satisfaction of the judgment to the extent of the amount so received by him; 4th: That plaintiff forthwith surrender to and deposit with the clerk of this court, for and on behalf of defendant, all uncashed checks received by him in payment of dividends on said stock, or upon his failure so to do that the amount thereof be ascertained and determined by the court and that the judgment in favor of plaintiff be further satisfied to the extent of the amount so ascertained and determined.

As thus modified the judgment will stand affirmed, respondent to recover his costs on appeal.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 25, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 27, 1933.