[Civ. No. 9659. First Appellate District, Division Two.—March 19, 1935.]

E. A. O'CONNELL, Appellant, v. FEDERAL OUTFITTING COMPANY, INC. (a Corporation), Respondent.

William P. Hubbard and Abraham Glicksberg for Appellant.

Edgar C. Levey for Respondent.

NOURSE, P. J.—The plaintiff sought to recover $29,167.23 on a written contract dated April 1, 1928, under which he

and his partner were to make collections for the defendant and were to receive a commission therefor. The contract provided that the defendant might recall any accounts assigned to the plaintiff and his partner and agreed to pay full commission plus costs, where costs had been involved in the accounts recalled. In all other cases plaintiff and his partner were to bear costs. The plaintiff's partner assigned his rights under the contract to plaintiff, defendant was notified, and there was no objection made. Plaintiff continued to make the collections alone and in so doing incurred $2,574.70 in costs and expenses. Between the months of September and December, 1931, defendant notified plaintiff that it would endeavor to collect the same accounts which had been assigned to plaintiff; it refused to deliver the originals of many obligations, without which judgment could not be taken against debtors; and it made statements to three persons to the effect that they should pay the defendant directly as plaintiff was no longer representing defendant. On December 31, 1931, plaintiff terminated the contract and brought this action, claiming commission and expenses on all of the accounts he had had. He had judgment for $99.13—commission on the accounts of the three persons above mentioned—and from this he presents two appeals—one to review the judgment and the other from the order made after judgment denying appellant's motion for another and different judgment in appellant's favor.

On the appeal from the judgment appellant grounds his attack upon the conflict in the findings of fact. He directs attention to findings numbered 3, 4 and 5 wherein it was found that plaintiff, through ''solicitations, personal appeals, suits and otherwise'' performed in every detail all the terms, covenants and conditions of the contract to be performed on his part and expended ''as necessary costs and expenditures in making said collections, the aggregated sum of $2574.70''. Then he calls attention to finding numbered 10 wherein it was found that ''it is not true that plaintiff ever paid or laid out or expended any sum of money whatsoever for the defendant, or rendered or performed any services to or for defendant''. The conflict between these two groups of findings cannot be reconciled.

Under the contract defendant agreed to pay plaintiff ''25% on all collections'' on certain cases; ''50% on all

collections'' effected outside of San Francisco; and ''50% on all collections'' on certain classes of old accounts. It required the plaintiff to bear all costs of suit, except, where an account was recalled, the defendant agreed to reimburse plaintiff for such expenditures. Then section 4 of the contracts reads: ''The Federal Outfitting reserves the right to recall any account that they assigned to O'Connell and Nacht and in consideration the Federal Outfitting Co., agree to pay O'Connell and Nacht their full commission plus costs expended for each case thus recalled; where costs have been expended.'' Having agreed to reimburse plaintiff for ''costs of suit'' in section 3 of the contract it would seem that the parties contemplated something different in section 4. A reasonable interpretation of this section is that the parties intended that the plaintiff should be paid the ''full commission'' earned on collections made to date of recall *plus* whatever costs had been expended in making such collections. It will be noted that the commission is not rated on the face of the account assigned but on the ''collections'' made. It is just as unreasonable to hold that, if the plaintiff should have paid seven dollars in court costs on a five hundred dollar account which is recalled, he should be entitled to the full commission on the whole account of which none had been collected, as to hold that, if he had collected four hundred dollars on the account without suit, he should receive nothing. But, aside from the question of the interpretation of the contract, we come back to the attack upon the findings of fact upon which the conclusions of law adverse to plaintiff must find their support.

■ The legal liability of the defendant to pay for the services or to reimburse plaintiff for the costs incurred may be a debatable question and for that reason he was entitled to a finding of fact as to whether the services were or were not performed, and whether the costs were or were not incurred. But, in view of this conflict in the findings as to the essential facts involved, it was not possible for the court to draw a legal conclusion on the liability of the defendant and this would require a reversal of the judgment. (*Darrah* v. *Lang*, 119 Cal. App. 552, 555 [6 Pac. (2d) 989]; *Robb* v. *Cardoza*, 110 Cal. App. 116, 120 [293 Pac. 851]; 2 Cal. Jur., p. 1030; 24 Id., p. 965.)

Of a more serious nature is the attack upon the conclusions of law which denied recovery to plaintiff in face of the finding of full performance on his part. Though the defendant had reserved the right to recall all the accounts under certain conditions, he argues that there is no evidence to show that it exercised that privilege; and the trial court did not find that any accounts had been recalled except the three mentioned, for which plaintiff had judgment. It is unnecessary to decide what act would be required to effect a recall of an account. Manifestly it would not be necessary to notify the debtor in each instance that his account had been taken out of plaintiff's hands. But assuming, as we must in view of the findings, that no other recalls were made, then we are unable to reconcile the judgment with the specific finding of the fact of interference and repudiation appearing in finding numbered 7, which reads: "That between the months of September, 1931, and December, 1931, and after the transfer and assignment to plaintiff of such claims for collection, under the terms of said contract between plaintiff and defendant, and after plaintiff had devoted much time, and performed valuable services, and expended much money for expenses and for costs in attempting to make collections of all said claims, the defendant did notify plaintiff that it would proceed on its own account to make efforts to collect the same accounts, which it had previously assigned and transferred to plaintiff under said contract for collection, and did during said time refuse to deliver to plaintiff the originals of many of the obligations of debtors, the collection of which had been assigned and transferred to plaintiff by defendant for collection, which said originals it was necessary for plaintiff to have, so that judgments could be taken against such debtors upon such obligations, and without which, judgments could not be taken. And defendant did during said time, and on separate occasions, make statements to each of several persons, to wit: Amelia Ramirez, Darwin P. Acheson and Edwin H. Pillsbury, whose claims defendant had so transferred to plaintiff for collection, under said contract between plaintiff and defendant to pay no money whatever to plaintiff upon their indebtedness to defendant, but to pay the same at all times to defendant, direct, for plaintiff was no longer represent-

ing defendant in the collection of its claims against debtors."

The evidence supporting this finding is not controverted. Defendant's cooperation with plaintiff in the manner mentioned was found to be necessary to plaintiff's performance of the contract. Defendant not only refused cooperation but expressly informed plaintiff that it would also handle all these assigned accounts. This was manifestly such an interference with plaintiff's rights under the contract as would defeat its purpose and render substantial performance by the plaintiff apparently impossible. (1 Restatement of the Law of Contracts, p. 475, sec. 318; 6 Cal. Jur., p. 457, sec. 273.) Plaintiff was thereupon entitled to treat this as a repudiation and accordingly gave notice of his termination of the contract.

█ When a party to a contract has thus been injured by its breach he may pursue any of three remedies. "He may treat the contract as rescinded and may recover upon a *quantum meruit* so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. In this last case the contract would be continued in force for that purpose." (*McConnell* v. *Corona City Water Co.*, 149 Cal. 60, 64 [85 Pac. 929, 930, 8 L. R. A. (N. S.) 1171]; *Sobelman* v. *Maier*, 203 Cal. 1, 8 [262 Pac. 1087]; 6 Cal. Jur., p. 460, sec. 274.)

█ Here the plaintiff elected to pursue the last of these remedies. One element of damages was proved to the satisfaction of the trial court as indicated by the finding covering his expenditures under the contract. (1 Restatement of the Law of Contracts, pp. 525, 528.) But, because of the conflict between this finding and findings numbered 10 and 11, as above noted, we cannot direct a judgment on that issue, and, for the same reason, the trial court could not have ordered judgment for plaintiff on these findings.

For the reasons given the judgment is reversed and the order is affirmed, with costs to appellant.

Sturtevant, J., and Spence, J., concurred.

Petitions by appellant and respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1935.