[Civ. No. 8837. Fourth Dist., Div. One. June 14, 1968.]

JACK COLEMAN, Plaintiff and Appellant, v. LUIGI S. MORA, Defendant and Respondent.

Frank Pomeranz and Seymour Pomeranz for Plaintiff and Appellant.

Sachse & Cooley and Franz R. Sachse for Defendant and Respondent.

WHELAN, J.—Plaintiff, a real estate and business opportunities broker, appeals from a judgment based on written findings of fact denying him recovery for commissions. Plaintiff designated as the record on appeal only the judgment roll, and in ordering the clerk's transcript did not designate for inclusion any of the exhibits; however, plaintiff has had brought up the exhibits received in evidence, including three written agreements to pay commissions, of which one dated August 4, 1966 is that under which plaintiff makes his claim.[1]

### THE PLEADINGS

The complaint alleges the making of a contract on August 4, 1966, to pay commissions on any sale of certain real and personal property made between August 4 and 6 p.m. of December 31, 1966; that defendant made a sale during said period either directly or through a broker other than plaintiff; that plaintiff had performed all conditions of the contract to be performed by him.

---

[1] The other exhibits included:

1. Defendant's letter dated November 25, 1966, as follows: "This is to let you know that, inasmuch as you and your agency have not brought in a single interested party regarding the sale of my business during the past four months, it is evident that you are not doing that which should be done to effect the sale of same. Therefore be advised that as of date above you are no longer representing me in the sale of the business located at 502 So. Main, Fallbrook, Calif."

2. An "open listing" dated October 29, 1965.

3. An "open listing" dated May 5, 1966.

4. Copy of a communication dated January 31, 1966, giving defendant names of six prospects.

5. An office notation that on July 18, 1966, John Hall called in response to an ad on another business and defendant's property among five others was mentioned to him.

6. An office notation that on December 8, 1966, a prospect was shown another liquor store and that defendant's property among 11 others was mentioned to him.

7. Letter dated May 3, 1966 giving defendant names of four prospects.

The answer admitted the making of the contract and the making of a sale, which defendant denied was made during the life of plaintiff's agreement and alleged the rescission and cancellation of the agreement by mutual consent on November 25, 1966; that the plaintiff abandoned the agreement on November 25, 1966, and that on that date defendant rescinded the agreement because of plaintiff's failure and refusal to perform the conditions of the agreement to be performed by him; that on October 29, 1965, defendant had listed the property with plaintiff for 180 days under a written open listing agreement; and again on May 5, 1966, for 180 days under a similar open listing agreement; that the agreement of August 4 was entered into by defendant in reliance upon plaintiff's agreement to seek diligently for a buyer, and that plaintiff failed and refused to advertise the property or to seek prospective purchasers; and that the agreement was entered into by defendant without consideration; it was denied that plaintiff performed his obligations under the contract.

## The Findings

The findings, so far as they bear upon the issues on appeal, were as follows: that by the agreement of August 4, 1966, defendant appointed plaintiff as his exclusive agent for the sale of the property; that on November 25, 1966, defendant revoked said agency by a written revocation thereof; that said revocation of plaintiff's agency was based upon the facts that during the period subsequent to the execution of the agency plaintiff did not present to defendant any offers either at defendant's listing price or at a lower price, and plaintiff did not produce any prospective purchasers or "lookers" at defendant's business; that during the period between August 4, 1966 and November 25, 1966, plaintiff advertised the property for sale along with other properties; that on October 31, 1966, defendant entered into an agreement, in writing, with California Business Brokers, San Diego, California, appointing said brokers his exclusive agent for the sale of said property; on November 30, 1966 and prior to the expiration of defendant's exclusive agency listing to plaintiff, defendant accepted an offer theretofore made for the purchase of said property, which offer was presented to defendant by California Business Brokers; that thereafter an escrow was opened for the sale of said property and subsequently thereto title was transferred to the vendees; that the consideration for the sale of the personal property was $75,000, and of said real property $100,000.

The trial court made a conclusion of law that defendant had good cause for the revocation of the agency agreement with plaintiff, and that the revocation was communicated to plaintiff and had been effectively accomplished prior to the sale of the property.

## The Nature of the August 4 Agreement

The agreement has the printed heading, "This Is An Exclusive Listing." Between the words "exclusive" and "listing" the word "agency" has been inserted in ink.

The body of the agreement reads:

"In consideration of the services of the undersigned Broker, I hereby list exclusively and irrevocably with said broker from the date hereof until 12/31/1966, at 6 p.m., the business, lease, real and/or personal property described above, and I hereby grant said broker the exclusive and irrevocable right to sell, exchange or lease the same within said time at the price and on the terms herein stated, or at such price and terms which are or may be accepted by me, and to accept a deposit thereon. In case of any affiliation or employment, sale, conditional sale, exchange or lease of the same by the undersigned owner, the undersigned broker, or any person, during the listing period or within the subsequent 180 days, to or with any party contacted by the seller or said broker during the listing period, I hereby agree to pay Jack Coleman & Associates on demand 10% of the total price received by me or the minimum commission of $9000, whichever is greater. Real property 6%.

"I hereby certify that I have read, understand and approve the foregoing. All statements contained herein are accurate and correct. I agree to furnish proof of same.

"(Owner) L. S. Mora

"Receipt of a copy of this listing is hereby acknowledged.
"Date 8/4, 1966

"By Paul S. Chapman

"For Jack Coleman & Associates"

It is to be gathered that the court interpreted the insertion of the word "agency" in the caption of the agreement to make it what is known as an "exclusive agency" rather than an "exclusive right to sell." Such an interpretation of an agreement in the light of a change made by the broker in a printed form that might otherwise give an exclusive right to sell has the authority of precedent. (*Marks* v. *Rowley*, 102

Cal.App.2d 619 [228 P.2d 29].) A contract prepared by a broker that is claimed to give an exclusive right to sell has been construed narrowly as against the broker. (*E. A. Strout Western Realty Agency* v. *Gregoire,* 101 Cal.App.2d 512 [225 P.2d 585].)

The briefs on both sides speak of an exclusive listing agreement. Distinctions between ''exclusive rights to sell'' and ''exclusive agencies'' are important in cases where a sale is made by an owner without the intervention of another agent. (*Jones* v. *Foster,* 116 Cal.App. 102 [2 P.2d 582]; *Snook* v. *Page,* 29 Cal.App. 246 [155 P. 107].)

Here, the sale was made through another agent; moreover the agreement contained an express promise to pay a sum of money equivalent to a commission in the event of sale, by whomever made, so that whether an exclusive right to sell or an exclusive agency existed is of little importance in the particular circumstances.

## Scope of Review on Appeal

We look only to determine whether the findings of fact are sufficient to support the judgment, since it is conclusively presumed that the evidence supports the findings of fact in a judgment roll appeal. (*Miller* v. *Wood,* 188 Cal. App.2d 711 [10 Cal.Rptr. 770]; *White* v. *Jones,* 136 Cal.App. 2d 567 [288 P.2d 913]; *Keim* v. *Roether,* 32 Cal.App.2d 70, 73 [89 P.2d 187].)

The findings are to receive, if possible, such a construction as will uphold rather than defeat the judgment of the court; they must be liberally construed, and any ambiguity or inconsistency must be resolved in favor of sustaining the judgment. On such an appeal every presumption and intendment is resolved in favor of the regularity of the proceedings of the trial court. The judgment will not be reversed except for some fatal error appearing on the face of the judgment roll.

## Contentions of the Parties

It must be the theory of the plaintiff that in order for a broker to recover under an agreement such as that under consideration, his obligation is met by a token effort to sell the property.

Although plaintiff states in his brief that Coleman, during the specified term of the listing agreement, expended time, effort and money, as ''found by the court,'' the court did not find that plaintiff expended either time, effort or money, but

that he advertised the property with other property. If we are to assume everything possible in favor of the judgment, we should assume that the advertising was no more than a token made for the purpose of insuring to the plaintiff the benefits of an advantageous monopoly.

It is also stated by plaintiff that real estate listings, such as the one involved in the instant case, can be classified as unilateral offers by sellers which are accepted when the brokers perform the acts for which they are engaged; that once the offeree has commenced his performance and has expended time, effort and money in initiating performance, the unilateral offer becomes irrevocable by the offeror.

Defendant, while denying that the revocation was wrongful, contends that if plaintiff had a remedy it was to sue for damages for breach of the contract rather than for a full commission.

WHAT ARE THE BROKER'S RIGHTS FOR WRONGFUL REVOCATION?

■ Defendant argues that the revocation of the agency, whether rightful or wrongful, left plaintiff in the latter event with only an action for damages for breach of contract. However, the contract is something more than an agency contract, since it contains a promise that defendant will pay to plaintiff a fixed percentage of the sale price should a sale be made within the specified period.

There is a clear distinction between contracts merely granting an exclusive agency or an exclusive right to sell and those containing in addition an express promise to pay independently of the exercise of the agency. (*Walter* v. *Libby,* 72 Cal.App.2d 138, 144 [164 P.2d 21] ; *Isern* v. *Gordon,* 127 Kan. 296 [273 P. 435, 64 A.L.R. 391].)

It is that additional promise that differentiates the present contract from those in such cases as *Faith* v. *Meisetschlager,* 45 Cal.App. 7 [187 P. 61].

Under a contract worded as is the ''exclusive'' here, the broker is entitled to a commission when the owner, in derogation of the broker's rights, takes the property off the market (*Baumgartner* v. *Meek,* 126 Cal.App.2d 505 [272 P.2d 552] ), or otherwise wrongfully deprives the broker of the opportunity to make a sale at any time during the term of the agreement, as by giving a lease with an option to purchase (*Rucker* v. *Hall,* 105 Cal. 425 [38 P. 962] ) ; or by exchanging the property (*Wright* v. *Vernon,* 81 Cal.App.2d 346 [183 P.2d 908] ) ; or by entering into a contract to sell (*Walter* v. *Libby,*

*supra,* 72 Cal.App.2d 138). (*McMahan* v. *Burns,* 216 Pa. 448 [65 A. 806]; *Williamson Real Estate Co.* v. *Sasser,* 179 N.C. 497 [103 S.E. 73].)

The right of the innocent party, where a contract has been repudiated by the other party is thus clearly stated in *O'Connell* v. *Federal Outfitting Co.,* 5 Cal.App.2d 327 · [332] [42 P.2d 1070]:

" 'When a party to a contract has thus been injured by its breach he may . . . "sue for the profits he would have realized if he had not been prevented from performing. In this last case the contract would be continued in force for that purpose." ' " (*Rehart* v. *Klossner,* 48 Cal.App.2d 46, 50-51 [119 P.2d 148].)

### RIGHT OF REVOCATION IN GENERAL

It is conceded that defendant had the power to revoke plaintiff's agency within the period for which it was created notwithstanding it was declared to be irrevocable.

The question, of course, is whether he might rightfully revoke the agreement for any reason other than the lack, at the time of making of the contract, of an element essential to its creation.

We conclude that any ground upon which a party to a contract may rightfully rescind it is available to a principal in rescinding a contract of agency; the law applicable to agency is not set apart from the general body of contract law.

Section 1689, Civil Code, provides that a party to a contract may rescind the same if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part.

Was there a failure of consideration here such as to justify rescission by defendant?

### THE QUESTION OF CONSIDERATION

The ordinary agency contract employing a broker on a nonexclusive basis for other than a specified time does not require a consideration for the promise of the principal to pay a commission.

A different element enters when the principal gives the broker an exclusive agency or an exclusive right to sell irrevocable within a certain period with a promise to pay a commission if a sale is made within that period, even though not as a result of the broker's effort.

For such a promise a consideration is required. That con-

sideration is the promise of the broker, express or implied, to make diligent effort to find a buyer.

An agreement that a broker's agency be irrevocable requires a separate consideration independent of the compensation to be rendered for the service to be performed.

"The consideration for her promise to pay the money if the sale was made by her was the performance of services by the brokers in seeking a purchaser." (*Kimmell* v. *Skelly*, 130 Cal. 555, 559 [62 P. 1067].) (See also *Walter* v. *Libby, supra*, 72 Cal.App.2d 138, 144, and *Gunning* v. *Muller*, 118 Wash. 685 [204 P. 779, 780].)

Here the printed form containing the agreement signed by the defendant on August 4 contains also a printed form for an "open" listing in which the words "In consideration of the services of the undersigned broker" do not appear.

The history of brokerage contracts in California throws some light on the requirement of consideration for the exclusive right to sell. Such contracts often took the form of an option given to the broker with an agreement to pay a commission should a sale be made, which might be a part of the same writing as, or in a writing separate from, the option. "A brokerage contract sometimes is in the form of an option, the broker being given an 'option' on the property and it being stipulated that in the event of sale to him or his customer or assignee he shall receive a commission." (27 A.L.R.2d p. 1417.)

Such contracts are found in, among other cases, *Hiss* v. *Sutton*, 203 Cal. 459 [264 P. 748]; *Hiss* v. *Mulholland*, 96 Cal.App. 121 [273 P. 859]; *Brown* v. *Mason*, 155 Cal. 155 [99 P. 867, 21 L.R.A. N.S. 328]; *Rice Lands etc. Co.* v. *Blevins*, 61 Cal.App. 536 [215 P. 402]; *De la Questa* v. *Armstrong Holdings Co.*, 48 Cal.App. 487 [192 P. 135]; and *Mitchel* v. *Gray*, 8 Cal.App. 423 [97 P. 160].

In *Mitchel* v. *Gray, supra,* 8 Cal.App. 423, there were two writings, one in form an option, the other to pay a commission on sale of property. Since there was no consideration for either, even construed together, they constituted only a purported exclusive right to sell within the period of the purported option, which might be revoked without payment of commission on sale made to another within the time limit.

In *Hiss* v. *Mulholland, supra,* 96 Cal.App. 121, and in *Hiss* v. *Sutton, supra,* 203 Cal. 459, a cash consideration was paid for the option.

In *De la Questa* v. *Armstrong Holdings Co., supra,* 48 Cal. App. 487, 492, also, there was no consideration paid at the

time of signing for a similarly worded agreement contained in a single writing. The broker did perform services and found a purchaser, without there having been a formal exercise of the option. The court, in support of a judgment in favor of the broker, quoted from a Utah case the following: " 'It seems to us that it was the intention of all the parties to the contract in question to grant the appellant a fixed time within which he had the exclusive right either to purchase or sell the property at the price stipulated in the contract, and if he did either he was to receive 5 per cent of the selling price as a commission.' (*Burt* v. *Stringfellow,* 45 Utah 207, 216 [143 P. 234, 237].) "

### THE BROKER HAD AN OBLIGATION ALTHOUGH HE MADE No EXPRESS PROMISE.

 Plaintiff's position is that the agency agreement, coupled with the promise to pay a commission on any sale made within the period, whether or not plaintiff procured the buyer, was unilateral until plaintiff should perform some act upon the doing of which the promise of defendant should become binding upon him; as would be true with regard to a naked promise to pay a commission to a broker should he procure a purchaser.

The agreement sued upon was not, however, such a contract. The promises not to revoke the agency and to pay a commission did not depend upon the plaintiff's making a sale, but were offered in exchange for plaintiff's services whether they should be successful or not.

The contract does not in form contain any promise by plaintiff; the signature of plaintiff does not appear to be that of a contracting party, or to be an acceptance of defendant's offer or promise, but is placed on the paper only as an acknowledgment of receipt of a copy. The writing speaks of "the services of the undersigned broker"; immediately under the caption appear the words, "Do not close a sale, lease, or exchange without consulting the undersigned broker"; at a third place it mentions "the undersigned broker."

Thus the printed language suggests that plaintiff joined in the execution of the agreement. It is almost as though the principal were intended to believe that the agent undertook certain obligations while the agent would be free to disclaim any obligation.

The necessary element of mutuality did not require the express promise of plaintiff to perform the services.

The agreement at least implies an obligation to furnish what is said by the contract to be the consideration for

defendant's promise to pay a commission even for a sale to a purchaser not procured by plaintiff.

"Frequently, it happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it is manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied." (17 Am.Jur.2d, § 20, p. 356-357.)

"While the California cases have never expressly held that a presumption in favor of bilateral contracts exists, the cases clearly indicate a tendency to treat offers as offers of bilateral rather than of unilateral contracts." (*Davis* v. *Jacoby,* 1 Cal. 2d 370, 379 [34 P.2d 1026].)

█ The acceptance of an offer to pay for services to be performed by the offeree obligates the latter to perform the services, without an express promise on his part to do so. (*Meyers* v. *Nolan,* 18 Cal.App.2d 319, 323 [63 P.2d 1216].) "By accepting defendant's proposition plaintiff's assignors bound themselves to render the services called for, thereby establishing a sufficient consideration." (*Meyers* v. *Nolan,* 18 Cal.App.2d 319, 323 [63 P.2d 1216].)

The performance of such services by the promisee fixes the obligation of the promisor and furnishes consideration therefor. (*Yaguda* v. *Motion Picture Publications, Inc.,* 140 Cal. App. 195 [35 P.2d 162].)

█ Is the Failure to Perform Services a Material Breach Justifying Rescission?

Yes. It is obvious that the diligent performance of services alone was the inducing consideration for the giving of what purported to be an irrevocable agency and a promise to pay a commission for any sale made whether resulting from plaintiff's efforts or not.

█ "A person who makes a contract with another to perform services as an agent for him is subject to a duty to act in accordance with his promise." (Rest., Agency § 377, p. 834.)

"(1) A principal is privileged to discharge before the time fixed by the contract of employment an agent who . . . fails to perform . . . a material part of the promised service. . . ." (Rest., Agency § 409 (1).)

Charles Bruce Morison, in 28 Law Quarterly Review 398, in discussing the common law background of the right to rescind for a partial failure of consideration that finds expression in

section 1689, Civil Code, makes the following observations, which are of persuasive value:

"[W]hen one party fails . . . whether voluntarily or involuntarily, to fulfil the inducement or consideration which he held out or gave for the other party's promise, and without which such promise would, in law, have no binding force or effect, such other party's promise becomes as a promise given without consideration. . . .

"[A] failure of part of an executory consideration will disentitle the party in default to enforce the contract (or, in other words, will entitle the other party to rescind) if the failure be in respect of a part of the consideration which was material to the inducement. . . .

"[T]he right of one party to a contract to rescind for breach, or failure to perform, and the right of such party to resist the enforcement of the contract, in an action on the contract for damages by the party in default, are in effect one and the same thing." (Selected Readings on the Law of Contracts, pp. 920, 927 and 930.)

The right to rescind for a partial failure of consideration may be exercised although there has been a partial performance by the party against whom the right is exercised. (*Brown* v. *National Elec. Works*, 168 Cal. 336 [143 P. 606]; *Carlton* v. *Sevin-Vincent Seed Co.*, 129 Cal.App. 222 [18 P.2d 407]; *Mulborn* v. *Montezuma Improv. Co.*, 69 Cal.App. 621, 628 [232 P. 162]; *Pann* v. *Barry*, 118 Cal.App. 127 [4 P.2d 791]; *Wilson* v. *Corrugated Kraft Containers, Inc.*, 117 Cal. App.2d 691, 697 [256 P.2d 1012].) "The existence of financial detriment to the innocent party is not essential in order to excuse his further performance. A willful default may be material though no economic loss ensues." (*Wilson* v. *Corrugated Kraft Containers. Inc.*, 117 Cal.App.2d 691, 697 [256 P.2d 1012].)

If under such a contract the principal has the right of rescission because of a failure of consideration, he should not be required to withhold exercise of that right until the contract has expired by its own terms and the failure of consideration as to the principal has become total.

In that event the principal would be without remedy, since an action by him for damages would in ordinary circumstances be fruitless. That for which he has bargained, diligent efforts to bring about a sale of his property, would be postponed for a further period like a mirage receding into the distance.

If the right of rescission exists, it must be a right to rescind after the broker has had a reasonable time to exercise diligence and has failed to do so.

The question whether a party obligated to perform services has reasonably performed that obligation is one for the trial court. (*Meyers* v. *Nolan, supra,* 18 Cal.App.2d 319, 323.)

The period of the agency here was from August 4 through December 31. If, as the court must have found impliedly, plaintiff did not exercise reasonable diligence prior to the notice revoking his agency on November 25, we cannot say that the intervening period of time between the execution and revocation of the agreement was not of sufficient duration to afford to plaintiff a reasonable opportunity to manifest his good faith intention to perform his obligations under the contract.

The obligation of the broker to perform services and the right of the principal to rescind because of the broker's failure to perform found expression in *Fischer* v. *Patterson* 97 N.H. 318 [86 A.2d 851, 852-853], a case involving a contract containing substantially the same provisions as the contract here: ''A broker owes the owner of real estate the duty of using reasonable efforts to make a sale where that is the purpose of his employment. Restatement, Agency § 377(b). Such efforts should be greater where the agency of the broker is an exclusive one, for then the owner is so much more dependent upon the broker's services. If it should be found on a new trial, that the plaintiff breached this duty and that the breach justified a rescission of the contract of agency by the defendant, then it could be found that at the time of the sale to the Bickfords the contract with the plaintiff was no longer in force. If the contract had been rescinded or otherwise extinguished, then the plaintiff would not be entitled to a commission upon the happening of the event of a sale made by another agent. It is a question of fact upon all the evidence, with respect to which fact no opinion is intended hereby to be expressed, whether the contract was extinguished by mutual agreement or by rescission or whether the defendant is liable to the plaintiff under its provisions.''

Our attention has not been directed to any decision of the California courts dealing with a contract such as the present one, where recovery was allowed in the face of a trial court's finding that a broker had breached his agreement to perform services with reasonable diligence in an attempt to sell the

property.[2] A finding adverse to the broker on such an issue, of course, eliminates from consideration the many cases in which performance has been prevented by the wrongful act of the principal, as well as those cases in which recovery was allowed because a sale was made to a client of the broker. (*Falkenberg* v. *Giacomazzi,* 53 Cal.App. 449, 451 [200 P. 372] ; *Hall* v. *King,* 100 Cal.App. 70, 74 [279 P. 814].)

We conclude that there is a right of rescission with regard to such a contract.

Are the Findings Sufficient to Support the Judgment?

The allegation of plaintiff's complaint that he had performed all conditions of the contract to be performed by him was traversed by the answer. No finding was made on that issue, an affirmative finding on which would have been essential to a recovery by plaintiff under the views expressed herein.

A finding adverse to plaintiff on that issue would be equivalent to a finding that defendant had cause to rescind upon the ground of a partial failure of consideration, whether exercised by him or not.

There is, likewise, no specific finding that plaintiff failed to perform in a reasonably diligent manner services in attempting to make a sale of the property. Such a finding, as we have noted, would be equivalent to a finding that plaintiff did not perform the conditions of the contract on his part to be performed.

We have recited the findings that bear upon the question whether there was a partial failure of consideration justifying rescission, which is referred to in the findings as a revocation.

The conclusion of law that defendant had good cause for the revocation is no stronger than the findings of fact that purport to state the facts constituting the good cause.

Those facts as stated are purely evidentiary; but if considered as findings of ultimate fact justifying the revocation, they are to some extent inconsistent in that respect with the finding that plaintiff advertised the property, since the consideration was not necessarily the performance of services that were successful in interesting viewers of the property. While the failure to present offers, or to produce prospective purchasers or lookers has evidentiary value as bearing upon the question whether plaintiff was diligent in seeking to find a

[2]*Carlsen* v. *Zane,* 261 Cal.App.2d 399 [67 Cal.Rptr. 747], decided April 19, 1968, may be such a case.

purchaser, such failure is not itself the failure of the consideration; and a finding of such evidentiary facts does not support as a matter of law the conclusion that the revocation was rightful.

Is It Possible to Reconcile the Potential Inconsistency Between the Two Findings and Affirm the Judgment Based Upon the Conclusion of Law That Defendant Had Good Cause for Revocation and Upon an Implied Negative Finding on the Issue Whether Plaintiff Had Performed?

We have observed earlier that plaintiff might have advertised the property without thereby fulfilling his obligation to perform services in a reasonable manner. He might, for instance, have placed a single advertisement during the four-month period, listing therein defendant's property as one of several business opportunities. We have pointed out that it is for the trial court within the limits of its discretion to determine what constitutes reasonably substantial performance.

The authorities hereafter cited support the view that the inconsistency in the findings of evidentiary facts may be reconciled, and that the failure to find on a material issue does not necessarily compel reversal.

On appeal, apparent inconsistencies in the findings are resolved, if possible, in favor of the judgment. (*Rose* v. *Hunter*, 155 Cal.App.2d 319, 325 [317 P.2d 1027].)

"[W]henever the facts found are such as might authorize different inferences therefrom, it will be presumed that the inference made by the trial court was one that will uphold rather than defeat the judgment. In such case the appellate court will not draw from those facts any inference contrary to that which might have been drawn by the trial court for the purpose of rendering its judgment." (*Lincoln* v. *Averill*, 47 Cal.App.2d 335, 338 [117 P.2d 913].)

"When an appeal is perfected on the judgment-roll alone we must assume that all of the findings of the lower court are amply sustained by the evidence. Even though it appears that the trial court failed to find on an issue raised by the pleadings, error cannot be predicated on such failure in the absence of a record showing that evidence was introduced on such issue sufficient to sustain a finding on behalf of appellant. (2 Cal.Jur. 525, § 262.) In order to warrant the reversal of a judgment for failure to find on an issue it must be shown by the *record on appeal* that evidence sufficient to sustain a finding for the complaining party was introduced. (24 Cal. Jur. 947, § 189.) No such record has been presented. We must

assume, therefore, that had a finding been made on the issue it would have been adverse to appellant." (*Delanoy* v. *Delanoy,* 216 Cal. 23, 27 [13 P.2d 513].)

It has been broadly stated that: "Where an appeal is taken without a reporter's transcript . . . , the omission to make a finding on an issue raised by the pleadings is not a ground for reversal." (*Garwick* v. *Gordon,* 121 Cal.App.2d 247, 250 [263 P.2d 125].)

Where: ". . . an appeal is based upon the judgment roll alone, the omission of the trial court to make and file findings of fact upon issues raised by the pleadings is not a ground for reversal of the judgment on appeal . . ." (*D'Alessio* v. *D'Alessio,* 56 Cal.App.2d 118, 120 [132 P.2d 271].)

In *Klein* v. *Maddox,* 59 Cal.App.2d 141, 146 [138 P.2d 28], the rule is stated as follows: "[D]efendants have made no showing that a finding on that issue, if made, would have been favorable to them. Hence, they are in no position to complain of the absence of such a finding. Moreover, where the evidence is not set forth in the record, an appellate court will not consider an objection that the trial court failed to find upon an issue, even if the issue be a material one."

To the same effect are *Streicher* v. *Battles,* 29 Cal.App.2d 526, 528 [84 P.2d 1049]; *Cavagnaro* v. *Delmas,* 29 Cal.App.2d 352, 356 [84 P.2d 274]; *Lincoln* v. *Averill, supra,* 47 Cal.App. 2d 335, 341.

## NECESSITY FOR SPECIFIC FINDINGS

■ "[S]pecific findings are not necessary when the findings taken as a whole clearly show that they include the trial judge's conclusion upon material issues." (*Ryall* v. *Sears,* 155 Cal.App.2d 36, 40 [317 P.2d 100, 67 A.L.R.2d 472].)

"While it is true that the trial court made no specific finding as to whether the discharge was justifiable, there are several findings that clearly indicate that, had such a specific finding been requested (it was not), it would have been adverse to defendants." (*Crillo* v. *Curtola,* 91 Cal.App.2d 263, 274 [204 P.2d 941].)

"It would serve no purpose to reverse the case on the purely technical ground that an essential finding is lacking when we know from the trial judge's opinion that upon reversal he would make the necessary finding to support his judgment and we have the power to make that finding. (Code Civ. Proc., § 956a.)" (*Rose* v. *Hunter,* 155 Cal.App.2d 319, 324 [317 P.2d 1027].)

■ Taking the view that the failure to find on a mate-

rial issue raised by the pleadings, i.e., whether plaintiff had performed all conditions on his part to be performed, is not reversible error under the cited rule that it is to be presumed a finding on that issue would have been adverse to plaintiff, the necessity of finding with sufficient specificity on the affirmative defense of justifiable rescission is obviated.

Plaintiff has argued that defendant was in bad faith in revoking plaintiff's authority. It does not appear from the record that any specific finding was requested as to defendant's good or bad faith. Applying the rules that have been quoted, we must assume that if requested to make a finding the trial court would have found that defendant was in good faith. The real question, of course, is not the motive that led defendant to revoke the authority, but whether the facts justified the revocation. To quote *Elms* v. *Merryman Fruit etc. Co.,* 207 Cal. 747, 752 [279 P. 781] : ''We find no evidence in the record upon which a jury would be justified in finding bad faith or fraud on the part of the defendant in revoking the plaintiff's authority to proceed.''

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied June 24, 1968, and appellant's petition for a hearing by the Supreme Court was denied August 8, 1968.