[Civ. No. 38235. Second Dist., Div. Two. Dec. 14, 1971.]

SHELL OIL COMPANY, Cross-complainant and Appellant, v.
ALLIED CONSTRUCTION & ENGINEERING COMPANY, Cross-defendant and Respondent.

**COUNSEL**

McCutchen, Black, Verleger & Shea and Winchester Cooley III for Cross-complainant and Appellant.

Lillick, McHose, Wheat, Adams & Charles, Gordon K. Wright, and Kenneth R. Chiate for Cross-defendant and Respondent.

**OPINION**

**ROTH, P. J.**—Plaintiff Philip McMahon, a member of a work gang employed by respondent Allied Construction & Engineering Company (Allied), was injured aboard the vessel *Cal Tide* owned (by bareboat charter) by appellant Shell Oil Company (Shell). Shell answered plaintiff's complaint and cross-complained against Allied on the basis of indemnity clauses contained in the contract which both had executed to cover the maritime work in question and hereafter referred to in some detail. Plaintiff and Shell settled during the course of trial, the latter stipulating to an entry of judgment in favor of plaintiff in the sum of $70,000.

The cross-action was thereafter tried to the court sitting without a jury.

A memorandum of intended decision in favor of Allied was followed by proposed findings and conclusions prepared by Allied to which Shell objected. Shell also requested additional findings. The trial court adopted Allied's findings and conclusions, and overruled and rejected Shell's objections and request for additional findings. Shell appeals from the judgment entered in Allied's favor.

Plaintiff's injury occurred during the execution of the preparatory phase of a difficult maneuver which had as its object the relocation of the *Blue Water*, a floating drilling platform owned by Shell, by means of the *Cal Tide*. The latter vessel was equipped to hoist and drop into position the eight heavy anchors which held the *Blue Water* in place.

Critical to the operation, which was always executed by a special anchor moving crew, were four pendant cable drums which were used to store the cable used in raising and lowering the anchors. When the special anchor moving crew reported aboard at approximately 4:45 p.m. on February 4, 1965, the day of the injury, their foreman, Mr. Holder, was requested by one of Shell's "operations assistants," Mr. Douglas Smith, to remove "old" pendant cable which had been stored on one of the pendant cable drums. After issuing the instructions, Mr. Smith left for his office ashore.

The cable drum was equipped with a hydraulic power source which was operative on the day in question. The chain, however, which transmitted the power to the drum had been disconnected by agents and/or orders of Shell's agents and the Allied crew began to "free-wheel" the cable drum. It was in actuality in an effort to start the "free-wheel" that plaintiff climbed onto the support bracket of the drum and began pushing the drum's spokes with his left foot—while holding on to the turning rim of the drum—that his left foot slipped, was caught between the spokes and the bracket, and was crushed.

Shell's cross-complaint was based on the two theories that there had been a breach of the "implied warranty of workmanlike service owed by maritime contractors [Allied] to vessel owners [Shell]" and that under the terms of the written contract between Shell and Allied for the services of the anchor moving crew, the latter was required to indemnify Shell for the liability it incurred for the injury of plaintiff. Under the contract, Allied was not required to indemnify Shell if the "injury, death, loss or damage has resulted from the negligence of Shell without negligence" on the part of Allied or any subcontractor.

On the issue of negligence, the trial court's sole findings of fact were:

"10. The conduct of Shell's employees, including Mr. Doug Smith, in

connection with the maintenance of the hydraulic gear, including the drive chain and storage reel, amounted to negligence, and this negligence was a proximate cause of plaintiff's accident.

" . . . . . . . . . . . . . . . . . . . . .

"12. Allied was not negligent, or at fault in any way that caused or contributed in any way to the cause of plaintiff's accident."

Concerning Shell's implied warranty of workmanlike service theory, the trial court entered no clear findings thereon, except to note in its statement of intended decision that it was probably not necessary to decide the issue. However, summary findings of fact were made that the *Cal Tide* was "unseaworthy" because of its inoperative hydraulic gear in respect of the cable drums that had been free-wheeled and that this condition was the proximate cause of the injury.

Based on such findings, made despite Shell's formal timely transmission of specific findings and conclusions, new or supplemental* which were predicated upon a record containing a wealth of conflicting, technical and complex facts we are now asked to review the trial court's conclusional and basic finding, namely that Shell was, and Allied was not, negligent and that Shell, for this reason, cannot recover on the indemnity agreement.

The issue before us is governed by the provisions of section 634 of the Code of Civil Procedure: "When written findings and conclusions are required, and the court has not made findings as to all facts necessary to support the judgment or a finding on a material issue of fact is ambiguous or conflicting, and the record shows that such omission, ambiguity or conflict was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court found in favor of the prevailing party as to such facts or on such issue."

The Court of Appeal in *Whitney Inv. Co.* v. *Westview Dev. Co.,* 273 Cal.App.2d 594 [78 Cal.Rptr. 302], stated the following as a by now familiar corollary to section 634: "While the general rule is that findings phrased in general language, if otherwise sufficient, imply the finding of every fact essential to support the judgment, that rule is inoperative where requests for special findings have been made." (*Id.* at p. 604.)

---

*Cross-complainant's objections to findings of fact and conclusions of law proposed by cross-defendant, and proposed additional amended findings of fact and conclusions of law.

At bench, as we have seen, such a request was made and thus the issue, narrowly phrased, is whether the findings, as made, are "findings on specified material issues of fact." (*Garber* v. *City of Los Angeles,* 226 Cal. App.2d 349, 355 [38 Cal.Rptr. 157].) If no such findings are before us, the judgment must be reversed. (*Whitney Inv. Co.* v. *Westview Dev. Co., supra,* at p. 604.) Such a harsh sanction is warranted by the purpose of section 634 to discourage general findings which leave counsel and the appellate court unable to determine the trial court's resolution of conflicts in material facts. (*Id.*)

A routine legal analysis of the facts surrounding the injury must be responsive to the following questions: What was Shell's duty of care toward men engaged in the removal of the old cable from the pendant cable drum? What was Allied's duty of care in that respect? In what way, if any, did either Shell and/or Allied breach the duty of due care? While it could be argued that the trial court's finding, cited above, is implicitly responsive to these questions, what is absent from the findings as filed are the *material facts* upon which negligence on Shell's part was predicated.

Thus, there is not even a finding as to why (or by whom) the drive chain linking the drum to the hydraulic gear was removed; or whether "free-wheeling" in the removal of cable was standard practice and if standard, whether such practice conformed to the appropriate level of care; and if "free-wheeling" was negligent, whether such practice was known to Shell; and whether the drive chain was operative and known to be so to Allied; and whether Allied had any duty to request the drive chain or to refuse to remove the cable without the drive chain. This list of material facts which is not to be viewed as exhaustive is illustrative of factual issues which should have been but were not resolved. It is unnecessary to add that on each of these questions the parties introduced conflicting evidence. It is not the function of the Court of Appeal but rather the trial court to resolve factual conflicts on material issues of fact when a request for special findings has been made.

On the present state of the record we find ourselves unable to answer the persuasive argument made by appellant in the final paragraph of its closing brief, as follows: "Under the hold-harmless clause of the contract, Allied can escape liability only if McMahon's accident was caused by Shell's exclusive negligence. Under the warranty it can escape liability only if his conduct was safe and workmanlike under the circumstances. The circumstances were that on February 4, 1965, Allied was asked to do a job which could have been accomplished in a number of ways that did not require a man to stand on the drum. McMahon did stand on the drum, and it was this act which was the immediate cause of the casualty. It is impossible to

conclude that Shell's exclusive negligence was the proximate cause of the accident if the sole link by which such negligence could have operated was the volitional act of one of Allied's employees. If the voluntary act itself was reasonable and workmanlike—part of a 'procedure [which] had been adopted before without criticism or incident'—then one can only say that the accident was one of those rare events for which no one is to blame, as to which Allied is bound to hold Shell harmless. If, on the other hand, McMahon's act was not, in fact, safe and reasonable, then Allied is liable under the warranty of workmanlike service by which it is impliedly bound as a maritime contractor and which, in any event, it expressly assumed by contract."

Since we are by statute (§ 634) divested of the power to infer that the trial court found favorably to Allied on the material facts of this case, the judgment must be and is reversed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied January 3, 1972.