Filed 3/25/13  Relentless Air Racing v. Airborne Turbine Ltd. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RELENTLESS AIR RACING, LLC,<br><br>  Plaintiff, Cross-defendant and<br>Respondent,<br><br>v.<br><br>AIRBORNE TURBINE LTD.<br>PARTNERSHIP,<br><br>  Defendant, Cross-complainant and<br>Appellant. | 2d Civil No. B237191<br>(Super. Ct. No. CV090342)<br>(San Luis Obispo County) |

Here a jury found defendant breached a contract to provide a Federal Aviation Administration (FAA) airworthiness certificate for an airplane defendant sold to plaintiff.  We affirm.

FACTS

In April 2004, Airborne Turbine Ltd. Partnership (Airborne) sold a former French military jet to the predecessor of Relentless Air Racing, LLC (Relentless).[1]  The jet is known to the parties as the "Paris Jet."  The contract required Airborne to obtain a standard category airworthiness certificate (certificate) for the jet from the FAA.  The certificate would allow the jet to be used as a charter aircraft to generate revenues.  Relentless paid $175,000 and took possession of the jet.

_____

[1] Relentless and its predecessor entity are collectively referred to as "Relentless."

Airborne had difficulty obtaining the FAA certificate because of the jet's type of engines. Nevertheless, Wayne Fulton, a principal in Airborne, kept assuring Relentless that he could obtain the certificate.

As early as 2005, Relentless's principal, Kevin Eldredge, urged Fulton to "unwind" the agreement. Eldredge wanted Airborne to repurchase the Paris Jet for the original purchase price plus the amount Relentless spent in restoring it.

Instead, the parties entered into a new agreement on October 3, 2007. Under the new contract, Relentless agreed to purchase a helicopter from Airborne for $165,000. The purchase price was paid by a promissory note. The contract provides that payment in full on the note is due within 30 days of the date "the FAA releases the Standard Category Airworthiness for [the] Paris Jet."

The contract further provides:

"If Standard Category Certificate for Paris #027 cannot be attained on or before March 31st, 2008, [t]he promissory note for this sale will be reduced by $5000.00 each month starting April 1st, 2008 until FAA issues Standard Category Airworthiness for Paris Jet #027 OR [Airborne] agrees to purchase Paris Jet #027 for $204,540.00."

The contract prohibits Relentless from assigning the contract or any interest therein.

Relentless took possession of the helicopter subject to a security agreement giving Airborne a lien on the helicopter to secure its purchase price. The security agreement provides that if the helicopter is sold or transferred, the entire purchase price will become due.

On December 31, 2008, Fulton sent Eldredge an e-mail. The e-mail states that in March 2008 Fulton told Eldredge about his efforts to obtain the FAA certificate for the Paris Jet. The e-mail further states:

"Despite [Airborne's] repeated efforts before and after that time, the stalemate situation has not changed--persons and entities beyond [Airborne's] control are delaying and frustrating the transfer of the Paris Jet Type Certificate to the new designated Holder, and this is preventing [Airborne] from being able to deliver to

2

Relentless a replacement Standard Category Airworthiness Certificate for Paris Jet S/N 27. [Airborne] therefore hereby declares Force Majeure as to the inability of [Airborne] to deliver a replacement Standard Category Airworthiness Certificate for Paris Jet S/N 27, due to matters beyond [Airborne's] control."

Eldredge testified Fulton did not offer to purchase the jet. Eventually, Eldredge sold the jet on eBay for $100,000.

Eldredge testified that Fulton breached the contract by telling him he could not perform. Eldredge believed he had a right to do anything he could to minimize his damages.

In January 2009, Relentless sold the helicopter to Robinson Air Crane, Inc. (Robinson) for $215,000. The sale was subject to Airborne's lien. Eldredge testified, "I didn't believe that I could remove the lien until the price was at zero on the helicopter."

When Airborne learned the helicopter had been sold and moved to Florida, it twice attempted to repossess it. The attempts were unsuccessful. Airborne did manage however to take the helicopter's logbooks. The helicopter cannot legally be operated without the logbooks.

Relentless brought an action for breach of contract. Airborne cross-complained for breach of contract, conversion, unjust enrichment, interference with contract and other causes of action.

The jury found in favor of Relentless, but awarded only one dollar in damages. The jury made special findings as follows:

"1. Airborne Turbine Ltd. Partnership and Relentless Air Racing, LLC entered into a contract.

"2. Airborne Turbine Ltd. Partnership acknowledged or indicated clearly and positively, by words or conduct, that it would not or could not fulfill its duty under the Aircraft Purchase Agreement to deliver a Standard Category Airworthiness Certificate for the Paris Jet to Relentless Air Racing, LLC.

3

"3.  Airborne Turbine Ltd. Partnership was not excused from having to do all, or substantially all, of the significant things that the contract required Airborne Turbine Ltd. Partnership to do.

"4.  Airborne Turbine Ltd. Partnership breached the contract with Relentless Air Racing, LLC by attempting to repossess the helicopter and taking the logbooks for the helicopter.

"5.  Relentless Air Racing, LLC was harmed by that breach.

"6.  Relentless Air Racing, LLC's damages as a result of Airborne Turbine Ltd. Partnership's breach of the contract were $1.00 (One Dollar)."

DISCUSSION

I.

Airborne contends the trial court erred in determining as a matter of law that it had a contractual duty to provide Relentless with an FAA airworthiness certificate.

Over Airborne's objection, the trial court approved question 2 of the special verdict form.  The jury was asked whether Airborne clearly acknowledged that it would not or could not "fulfill its duty" under the contract to deliver the FAA certificate. Airborne argues the court improperly removed from the jury the question whether it (Airborne) had any such duty.

The interpretation of a contract is purely a question of law unless it depends on the credibility of extrinsic evidence.  (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)  Where the extrinsic evidence is not in conflict, the interpretation remains a question of law.  (*Ibid.*)

Airborne argues the contract imposes no duty on it to do anything. According to Airborne, the contract only creates a condition for payment.  Relentless must pay for the helicopter within 30 days following the "release" of the FAA certificate.

But the reasonable interpretation of the contract is that Airborne has the obligation either to obtain the FAA certificate or repurchase the jet.  Relentless holds the helicopter as security for the performance of the obligation.

4

This interpretation is supported by Fulton's testimony. Fulton testified on cross-examination:

"Q. And isn't it true that Mr. Eldredge wanted the following to happen by March 31st, 2008, the date you selected: He either wanted you to get the certificate to him or make an offer to purchase the Paris Jet, one or the other, because he wanted to have a date certain or drop-dead date for his protection?

"A. Yes."

Fulton further testified:

"Q. Okay. Basically, now you have a chance to unwind it in a contract for $204,540 by a certain date or give him [the] FAA certificate? That is your deal; right?

"A. Yes, and that was a good option. It was a very nice aircraft."

Airborne points to no conflict in the extrinsic evidence on the interpretation of the contract. The trial court was correct in determining that as a matter of law Airborne had a duty to provide the FAA certificate. The provision of the certificate was not simply a condition of payment for the helicopter.

II

Airborne contends the trial court erred in ruling the date of breach alleged in Relentless's complaint is not a judicial admission.

Relentless's unverified Judicial Council form complaint alleges Airborne breached the contract on June 4, 2009. That date corresponds with a day on which Airborne attempted to take the helicopter from Robinson. Relentless's theory at trial was that Fulton's e-mail of December 31, 2008, constituted an anticipatory breach of the contract. Airborne claims that if the default occurred on June 4, 2009, Relentless had no right to sell the helicopter to Robinson before that date.

Judicial admissions may be made in a pleading. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.) Facts established as judicial admissions are conclusive and may not be contradicted by the party making the admission. (*Ibid.*) The trial court has the discretion to disregard the admission. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871.)

5

Here the trial court refused Airborne's request to treat the allegation as a judicial admission. The court stated that Airborne took the opportunity at trial to examine Eldredge on when he believed the breach occurred and the complaint was not verified.

Airborne argues there is no authority that a judicial admission cannot be made in an unverified complaint. But certainly the trial court can consider whether an admission is made under oath in determining whether the admission should be conclusive.

Moreover, the complaint does not allege that the breach of June 4, 2009, was the first or only breach of the contract. Thus the allegation does not contradict evidence of an anticipatory breach on December 31, 2008. The trial court did not abuse its discretion in refusing to treat the allegation as a judicial admission.

Airborne also claims the trial court erred in refusing to allow it to refer to the June 4, 2009, breach allegation in argument to the jury. If it was error, the error is harmless. Fulton's December 31, 2008, e-mail is strong evidence of an anticipatory breach. There is no reasonable probability Airborne would have obtained a more favorable result in the absence of the alleged error. (9 Witkin, Cal. Procedure (5th ed. 2008) § 445, p. 499.)

### III

Airborne contends the trial court erred in refusing its proposed instruction on anticipatory breach.

The record does not contain the jury instructions given by the trial court. But the parties agree the court gave CACI No. 324. That instruction states:

"A party can breach, or break, a contract before performance is required by clearly and positively indicating, by words or conduct, that he or she will not or cannot meet the requirements of the contract.

"If [Relentless] proves that [it] would have been able to fulfill the terms of the contract and that [Airborne] clearly and positively indicated, by words or conduct,

6

that [it] would not or could not meet the contract requirements, then [Airborne] breached the contract."

Airborne proposed to add the following paragraphs to the instruction:

"However '[i]n the event [that Airborne] repudiate[d] the contract before the time for [its] performance has arrived, [Kevin Eldredge and Relentless have] an election of remedies--[they] may "treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or [they] can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise [their] remedies for actual breach if a breach does in fact occur at such time."' (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489 . . . .)

"Put another way, if the plaintiffs elected to 'wait until the time of performance arrives and exercise [their] remedies for actual breach' if it were to occur, they may not recover based upon any alleged anticipatory repudiation by [Airborne]."

The trial court wisely rejected Airborne's proposed instruction because the final paragraph misstates the law. Airborne reads *Romano* as providing that a plaintiff who does not immediately seek damages for anticipatory breach waives that right and must wait until the time for performance to seek damages for actual breach. But *Romano* does not say that. *Romano* says that the plaintiff "may" immediately seek damages for anticipatory breach. (*Romano v. Rockwell Internat., Inc.*, *supra*, 14 Cal.4th at p. 489.) Nothing in *Romano* says the plaintiff must immediately seek damages for anticipatory breach or waive that right.

In *Romano*, the question was whether the statute of limitations for breach of an employment contract begins to run when the employee is notified he will be terminated or upon actual termination. The court decided the statute begins to run upon actual termination. (*Romano v. Rockwell Internat., Inc.*, *supra*, 14 Cal.4th at p. 491.) The case neither holds nor discusses the issue raised by Airborne here.

In fact, Airborne's contention was expressly rejected in *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 516-518. There, a referee

7

interpreted *Taylor v. Johnston* (1975) 15 Cal.3d 130 as requiring a plaintiff who seeks damages based on anticipatory breach to immediately seek such damages or lose the right to treat the matter as an anticipatory breach. The Court of Appeal disagreed stating:

"We disagree with the referee's interpretation of *Taylor* and the way in which the word 'immediately' was applied to the facts of this case. In our view, the following is a correct statement of the law of California: A party to a contract does not lose the right to treat an implied repudiation of the contract as an anticipatory breach by failing to seek damages immediately after learning of the events that constitute the implied repudiation.

"The California Supreme Court stated that an injured party '*can* treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract . . . .' (*Taylor* [*v. Johnston*], *supra*, 15 Cal.3d at p. 137, italics added.) This language *authorizes* the injured party to immediately seek damages, but it does not necessarily *require* the party to seek damages immediately or lose the right to treat the repudiation as an anticipatory breach. In essence, the first sentence of the quote from *Taylor* describes the earliest point at which an injured party may seek damages. It does not say that the earliest point is the only point. Nor does that sentence identify the last point at which a repudiation may be treated as an anticipatory breach." (*Central Valley General Hospital v. Smith*, *supra*, 162 Cal.App.4th at p. 516.)

Airborne cites *Whitney Inv. Co. v. Westview Dev. Co.* (1969) 273 Cal.App.2d 594, 603, for the proposition that "[w]hile a notice of termination or cancellation of a contract for breach need not be formal and explicit, it should clearly indicate to the defaulting party that the injured party considers the contract terminated." But *Whitney* does not say the plaintiff must immediately notify a defaulting party of an election to declare an anticipatory breach. There is no reason why plaintiff cannot wait to decide whether to treat the defendant's repudiation as an anticipatory breach. Of course, where the plaintiff continues to accept the defendant's performance after the anticipatory breach, plaintiff may be deemed to have waived the breach. (*Ibid.*) But here Airborne

points to no evidence of its efforts to obtain the FAA certificate after the December 31, 2008, e-mail, much less Relentless's acceptance of that performance.

The judgment is affirmed. Costs are awarded to respondent.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.


9

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Cox Wootton Griffin Hansen & Poulos LLP, Rupert P. Hansen for Defendant, Cross-complainant and Appellant.

Adamski Moroski Madden Cumberland & Green LLP, David M. Cumberland, Joshua Michael George for Plaintiff, Cross-defendant and Respondent.